Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
Katherine A. Rabago, State Bar No. 333374 (kar@arnslaw.com)
**ARNS DAVIS LAW**
A Professional Corporation
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR SABORIO, individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AGRO RESEARCH INTERNATIONAL LLC; SENTINEL BIOLOGICS, INC.; AMAZON.COM INC.; AMAZON.COM SERVICES LLC; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. 3:23-cv-02086<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1. Violation of Cal. Bus. Prof. Code §§ 17500, *et seq.*<br>2. Violation of Cal. Bus. Prof. Code §§ 17200, *et seq.*<br>3. Fraud—Intentional Misrepresentation<br>4. Breach of Implied Warranty of Merchantability<br>5. Violation of Cal. Civ. Code §§ 1750, *et seq.*<br><br>DEMAND FOR JURY TRIAL |



FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff VICTOR SABORIO, on behalf of himself and all others similarly situated, bring this action against Defendants Agro Research International LLC ("ARI"), Sentinel Biologics, Inc. ("Sentinel"), Amazon.com Inc. ("Amazon"), Amazon.com Services LLC. ("Amazon Services"), and Does 1 through 100 (collectively, "Defendants"). Plaintiff alleges, upon information and belief, the investigation of their counsel, and the facts that are a matter of public record, as follows:

1.      Plaintiff brings this action to obtain restitution and damages, as well as injunctive and other relief, individually and on behalf of a proposed class defined below ("the Class") against Defendants, which Plaintiff contends falsely advertised and misrepresented products sold to Plaintiff and other consumers.

2.      As alleged herein, Plaintiff is a purchaser and user of the agricultural herbicide and fertilizer product titled Weed Slayer [hereinafter "Weed Slayer" or "Weed Slayer/Agro Gold WS"], manufactured by ARI and sold and distributed by Amazon. Weed Slayer is a two-part mixture: Part A is the herbicide and Part B is a biological surfactant that enables the herbicide to penetrate through the leaf. Part B, also called Agro Gold WS, is advertised as an organic biological amendment containing nothing more than soil-enhancing bacteria and water. In reality, however, Agro Gold WS contains the synthetic herbicides glyphosate and diquat, both of which are prohibited for use in organic production.

3.      Prior to and at the time of Plaintiff's purchases of Weed Slayer/Agro Gold WS, Defendants represented to Plaintiff that this product was natural, organic, suitable for use on organic plants, and contained clove essential oil as its only active ingredient. These representations were false.

4.      Due to Defendants' false and misleading advertising and statements, Plaintiff and members of the Class were induced to purchase a non-organic, synthetic herbicide that was far inferior in value than that which had been promised.

5.      Plaintiff asserts claims individually and collectively under the California False Advertising Law, Business & Professions Code sections 17500, *et seq*.; the Unfair Competition Law, Business & Professions Code sections 17200, *et seq*.; the Consumer Legal Remedies Act, Civil Code sections 1750, *et seq*.; for breach of the implied warranty of merchantability, and common law fraud.

6.     Plaintiff seeks actual and compensatory damages, civil penalties, punitive damages, restitution, equitable relief, costs and expenses of litigation including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

### JURISDICTION AND VENUE

7.     CAFA Jurisdiction: This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). This action is a class action as defined by 28 U.S.C. §1332(d)(1)(B). The complaint is brought as a "Class Action" and Plaintiff brings it "individually and on behalf of the proposed classes."

- Minimal Diversity: As alleged herein, Defendant Agro Research International LLC is a Florida corporation with its principal place of business at 703 Camarague Place #203 in Lake Mary, Florida. Defendant Sentinel is a Texas corporation with its principal place of business at 59 E Whistlers Bend Circle in Conroe, Texas. Defendants Amazon and Aamzon Services are Delaware corporations with their principal places of business located at 410 Terry Avenue North, Seattle Washington. Additionally, Plaintiff is a resident of California and the proposed class consists of consumers who purchased Weed Slayer/Agro Gold WS on Amazon.com.

- Amount in Controversy Exceeds $5 million: The amount in controversy in the underlying dispute exceeds $5 million, thus satisfying 28 U.S.C. § 1332(d)(2). Plaintiff believes there to be more than 100 members of the proposed class. Plaintiff alleges that he and the proposed class have been fraudulently misled and intentionally misrepresented to in the course of the advertising and sale of Weed Slayer/Agro Gold WS.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, Defendants engage and perform business activities in and throughout the State of California; and class members purchased Defendants' products within this District.

/ / /

/ / /

CLASS ACTION COMPLAINT
2

# PARTIES

**Plaintiff**

9.      Plaintiff Victor Saborio is, and at all times relevant herein was, a resident of Los Angeles County, California. Plaintiff lives in Los Angeles County where he purchased Weed Slayer/Agro Gold WS on Amazon.com in reliance on the misrepresentations discussed herein. Had Weed Slayer/Agro Gold WS not been represented as organic, Plaintiff Saborio would not have purchased it. As a result of the misrepresentations made to him, Plaintiff Saborio unknowingly exposed his family, particularly his three-year-old daughter, to the synthetic ingredients when he used and applied the product in their yard at home.

**Defendants**

10.     Defendant Agro Research International LLC ("ARI") is a Florida corporation with its principal place of business at 703 Camarague Place #203 in Lake Mary, Florida. ARI maintains substantial ongoing business operations throughout California, including within this district, and is in the business of manufacturing and selling commercial agricultural products. ARI is the manufacturer of Weed Slayer and Agro Gold WS.

11.     Defendant Sentinel Biologics, Inc. ("Sentinel") is a Texas corporation with its principal place of business at 59 E Whistlers Bend Circle in Conroe, Texas. Sentinel is the manufacturer and designer of Agro Gold WS and ships the powdered substance to ARI for reconstitution, packaging, and distribution.

12.     Defendant Amazon.com Inc. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle WA. Amazon, or its affiliates, marketed, sold and shipped Weed Slayer/Agro Gold WS online to California consumers.

13.     Defendant Amazon.com Services LLC ("Amazon Services") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle WA. Amazon Services is an affiliate of Amazon, doing business in California and marketed, sold and shipped Weed Slayer/Agro Gold WS online to California consumers.

14.     The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiff who sue such Defendants by use of such fictitious names. Plaintiff will amend this complaint to

add the true names when they are ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct

15.    On information and belief, at all times herein mentioned, each Defendant was the agent, partner, joint venturer, representative, or employee of the remaining Defendants, and was acting within the course and scope of such agency, partnership, joint venture, or employment.  In engaging in the conduct described below, the Defendants were all acting with the express or implied knowledge, consent, authorization, approval, or ratification of their co-Defendants.

**CLASS ACTION ALLEGATIONS**

16.    Plaintiff Saborio brings this action as a class action pursuant to Federal Rules of Civil Procedure, rule 23, on behalf of herself and the following Class ("Purchaser Class"):

> Any person who purchased Weed Slayer, Agro Gold WS, or both, through Amazon.com, in California, at any time from April 28, 2019 to the present.

Plaintiff reserves the right to amend the Class definition if discovery or further investigation demonstrates that the Class should be expanded or otherwise modified.

17.    The members of the Classes are so numerous that joinder of all members would be impracticable.

18.    There are questions of law and fact common to the members of the Classes that predominate over any questions affecting only individual members, including, without limitation:

- Whether Defendants marketed and sold Weed Slayer/Agro Gold WS as an organic product suitable for use in organic production when, in reality, it contained the synthetic herbicides glyphosate and diquat;

- Whether Defendants marketed and sold Weed Slayer/Agro Gold WS as containing only a natural active ingredient when, in reality, it contained the synthetic herbicides glyphosate and diquat;

- Whether the manner in which Defendants advertised and marketed Weed Slayer/Agro Gold WS was likely to deceive consumers;

- Whether Defendants' conduct constitutes an unfair or fraudulent business act or

practice;

- Whether Defendants' conduct otherwise violates California law; and

- Whether, as a result of Defendants' conduct, Plaintiff is entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

19.  Plaintiff brings claims that are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class and are not subject to any unique defenses.

20.  Plaintiff will fairly and adequately protect the interests of all members of the Class and has retained attorneys experienced in class action and complex litigation.

21.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

- The Classes are readily definable;

- Prosecution as a class action will eliminate the possibility of repetitious litigation; and

- It is economically impractical for any or all of the members of the Class to prosecute individual actions;

- A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

22.  Plaintiff does not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

23.  For decades, glyphosate was the herbicide of choice for commercial and home growers to eliminate weeds and support healthy plant and crop growth. Glyphosate, developed in the 1970s by Monsanto scientists, has since been marketed by Monsanto for agricultural use under the trade name Roundup.

24.  In 2015, the World Health Organization classified glyphosate as "possibly carcinogenic to humans."

25.  In 2018 and 2019 a series of high-profile lawsuits were filed, and jury verdicts were reached, against Roundup's manufacturer, Monsanto (and later, Bayer), relating to its failure to

warn consumers of cancer risks posed by Roundup. In 2020, Bayer agreed to pay over $10 billion to settle approximately one hundred thousand cases against the company alleging health hazards related to the use of Roundup.

26.    Following the Roundup litigation, cities and municipalities began to ban the use of glyphosate-based herbicides, and consumers began to seek out alternative products that did not contain glyphosate.

**Weed Slayer: A Purportedly Natural and Organic Alternative**

27.    Defendant Agro Research International manufactures and advertises a purportedly organic alternative to popular synthetic herbicides, Weed Slayer. ARI's website advertises Weed Slayer as a two-part herbicide, containing one-part herbicide and one-part "biological soap" that must be added to the herbicide in order to assist the herbicide in penetrating through the leaf.



28.    The product instructions direct the consumer to mix Part A (Weed Slayer) and Part B (Agro Gold WS) in specified amounts and dilute with water before spraying on the desired area.

**DIRECTIONS FOR USE:**
Mix **32 ounces** of **PART A per acre** and **32 ounces** of **PART B per acre** into 25 gal-lons and up to 50 gallons of water per acre. **Make sure to agitate** and empty every jug thoroughly. When applying , make sure to protect all desirable crop or plants from overspray as **WEED SLAYER** will affect them. **SHAKE BEFORE USE**.

29.    The product label for Part A, Weed Slayer states: "Weed Slayer is a unique broad spectrum natural herbicide made from Eugenol, an essential oil of Clove, and molasses." The label lists the Active Ingredients as 6.0% Eugenol and the Inert Ingredients as 94.0% water and molasses. ARI's

website repeats the same information.

30.     The product label for Part B, Agro Gold WS, states that the product is a biological amendment containing bacteria and 65% water. The label does not disclose any additional active or inactive ingredients. Part B is advertised as a biological amendment, soap, surfactant, or adjuvant, that is, an additive intended to increase the herbicide's effectiveness. A video posted on Agro Research's Weed Slayer webpage states that Part B, Agro Gold WS, "drives the Eugenol [in Part A] into the plant."

**Sentinel Manufactured and Designed the Part B Biological Amendment with Knowledge That it Would Be Sold as Organic to California Consumers**

31.     Between 2014 and 2018, Sentinel registered two products as organic with the California Department of Food and Agriculture (CDFA). Sentinel directly communicated with CDFA to register these products and to renew each year. One of these products, Soil N-Lock, was manufactured by Sentinel for ARI under its Agro Gold brand.

32.     In or around early 2017, ARI asked Sentinel to design and manufacture a biological herbicide that it intended to market and sell under the brand name Weed Slayer. Sentinel manufactured the herbicide and shipped said substance to ARI in Florida. Upon receiving the herbicide from Sentinel, ARI added water to reconstitute it and then packaged and sold it as Agro Gold WS.

33.     The initial formulation of this herbicide ("the predecessor label product") was developed between 2017 and 2018. At this time, Sentinel knew, based on email and phone conversations with representatives of ARI, that ARI's intent was to have the product be sold as organic in California.

34.     ARI initially had trouble registering the predecessor label product as organic in California. After learning this, Sentinel assisted ARI in the registration process by using its own knowledge of the certification process in California and by modifying the formula to remove certain microbial components that were presenting hurdles to organic certification. This amended formula was what was eventually manufactured by Sentinel and sold by ARI as Agro Gold WS, or Part B of the two-part Weed Slayer product. Sentinel's creation of the predecessor label product and Agro Gold WS was part of the same effort to create an effective herbicide to be sold as a component of the ARI product Weed Slayer.

35.     In June 2018, ARI provided Sentinel with a confirmation letter from the CDFA stating: "We are in receipt of your organic input material registration fee for Agro Gold WS."  As a part of the registration process, the CDFA asked ARI—and ARI, in turn, asked Sentinel—to describe the manufacturing process for Agro Gold WS.

36.     At all relevant times, Sentinel was aware that ARI intended to sell Weed Slayer—including the component manufactured by Sentinel—in California as an organic product. Sentinel's assistance was critical in enabling ARI to market and sell Weed Slayer as an organic product in California.

**ARI Falsely and Misleadingly Advertised and Sold Weed Slayer as Organic and Natural**

37.     ARI's website advertises its products as "products for organic crops."



38.     The Weed Slayer/Agro Gold WS product labels state that the product is certified organic.

39.     Defendant's website makes the following statements about Weed Slayer:

- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."

- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."

- "Weed Slayer is made of Organic Eugenol and Molasses."

40.     Defendant's website further advertises its Agro Gold product line as "biological

amendments containing beneficial bacteria recommended for all crops."

41.    As discussed above, the product labels for Weed Slayer/Agro Gold WS list the only Active Ingredient as the clove oil-derived Eugenol.

42.    Contrary to Defendants' advertising and product labelling, however, Weed Slayer/Agro Gold WS contains two synthetic, non-organic Active Ingredients in addition to the Eugenol: glyphosate and diquat. Both chemicals are contained in Part B, Agro Gold WS.

**Studies Are Conducted to Measure the Efficacy of Weed Slayer, Suggesting Similarity to Synthetic Herbicides**

43.    A report created by the Research and Development Division of the country of Jamaica's Ministry of Industry, Commerce, Agriculture, and Fisheries, "comparing the effectiveness of Weed Slayer Organic Herbicide against two conventional broad-spectrum herbicides commonly used in Jamaica." The comparison in weeds treated with the products showed "no significant difference between glyphosate and [Weed Slayer]." The researchers concluded that "[t]hese results indicate similarities between the treatments." Finally, they noted that "[g]lyphosate is systemic herbicide therefore, based on the similar behaviour of [Weed Slayer] it would also appear [Weed Slayer] is also a systemic herbicide."



Figure 5 Change in total monocot density/m² for each treatment over five weeks. The same letters above the bars indicates no significant difference in the mean monocot density for LSD test where P ≤ 0.05.

44.    As demonstrated by the graph of weed growth over the course of the five-week trial, glyphosate and Weed Slayer (denoted as eugenol in the chart) followed almost *identical* patterns in preventing the growth of weeds. The other conventional herbicide did not match these patterns.

**Amazon Falsely and Misleadingly Advertised and Sold Weed Slayer as Organic and Natural**

45.    Amazon and Amazon Services repeated the representations made by ARI, above, to customers on its own website in order to induce customers to purchase Weed Slayer.

46.    At the time it made these statements, Amazon and Amazon Services should have known—based on publicly available research, including the report discussed above, that Weed Slayer contained glyphosate.

**Agro Research Failed to Disclose the Presence of Two Synthetic, Non-Organic Ingredients in Weed Slayer: Glyphosate and Diquat**

47.    On December 4, 2020, the CDFA announced that lab analysis of Agro Gold WS "detected the presence of Diquat and Glyphosate, which are substances prohibited by the U.S. Department of Agriculture (USDA) National Organic Program for use in organic production."

48.    Accordingly, the CDFA issued a Stop Use Notice and Statewide Quarantine and Removal from Sale Order for Agro Gold WS to all organic operations in California. The Notice and Order states "[s]ale and use of this product thus poses a public health risk because the product was found to contain herbicides not disclosed on its label" and orders all organic operations in possession of Agro Gold WS to hold the product and contact the CDFA for further instructions.

49.    Glyphosate and diquat are both synthetic, non-natural pesticides prohibited from use in organic production under 7 CFR §205.105.

50.    Indeed, glyphosate and diquat are present in Weed Slayer in amounts consistent with commercial non-organic herbicide concentrates (i.e. Roundup).

**FIRST CAUSE OF ACTION**
False Advertising
(Bus. & Prof. Code, §§ 17500, *et seq.*)

51.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

52.    Business and Professions Code sections 17500, *et seq.* prohibit the publication of any

statement concerning the sale of goods that is untrue or misleading. Defendants' conduct, as described above, constitutes the publication of untrue and misleading statements concerning the sale of Weed Slayer/Agro Gold WS.

53. Defendants engaged in the advertising and marketing to the public and offered for sale Weed Slayer/Agro Gold WS throughout California.

54. Defendant engaged in the advertising and marketing alleged herein with the intent to induce Plaintiff and the Class to purchase Weed Slayer/Agro Gold WS.

55. Defendants' advertisements and marketing representations regarding Weed Slayer/Agro Gold WS were false, misleading, and likely to deceive the public.

56. Specifically, Defendants made the following misrepresentations:

- Defendants' products are "products for organic crops."
- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."
- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."
- "Weed Slayer is made of Organic Eugenol and Molasses."
- The products in Defendants' Agro Gold product line are "biological amendments containing beneficial bacteria recommended for all crops."
- Agro Gold WS contains only bacteria and 65% water.

57. In reality, Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat, both of which are prohibited under federal law for use in organic production.

58. At the time Defendants made and disseminated the statements alleged herein, Defendants knew or should have known that the statements were untrue and misleading.

59. Plaintiff suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

60. Plaintiff, on behalf of himself and on behalf of the Class, seek restitution, injunctive relief, and all other relief allowable under the law.

//

## SECOND CAUSE OF ACTION
### Unlawful, Unfair, and Fraudulent Business Acts and Practices
(Bus. & Prof. Code, §§ 17200, *et seq.*)

61.     Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

62.     Business & Professions Code sections 17200 *et seq*. prohibits acts of "unfair competition" which is defined by Business & Professions Code section 17200 as including "any unlawful, unfair or fraudulent business act or practice."

### Unlawful Business Acts and Practices

63.     Defendants' conduct, as described above, constitutes unlawful business acts and practices.

64.     Defendants, by the conduct described above, have violated and continue to violate Business & Professions Code section 17200's prohibition against engaging in "unlawful" business acts or practices by violating Cal. Civil Code §§ 1750, *et seq*; breaching the implied warranty of merchantability; and by committing common law fraud, as discussed in the relevant causes of action herein.

65.     Plaintiff suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

66.     As a result of Defendants' conduct, Plaintiff is entitled to restitution of monies paid for the purchase of Weed Slayer/Agro Gold WS.

67.     Plaintiff also seeks on behalf of the general public an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

### Unfair Business Acts and Practices

68.     Defendants' deceptive acts and practices, as described above, constitute unfair business practices within the meaning of Business & Professions Code, sections 17200, *et seq*.

69.     Plaintiff and other members of the class suffered a substantial injury in fact resulting in the loss of money or property by virtue of Defendants' conduct.

70.     Defendants' conduct does not benefit consumers or competition. Indeed, the injury to consumers and competition is substantial. As described above, Defendants deceptively marketed

and sold Weed Slayer/Agro Gold WS as a natural, organic herbicide that contained only clove essential oil as its active ingredient. These representations induced Plaintiff and the Class to purchase and use the product. In reality, however, the product contained glyphosate and diquat, both synthetic herbicides prohibited by federal law for use in organic production.

71.     Plaintiff and Class members could not have reasonably avoided the injury each of them suffered.

72.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore, is immoral, unethical, oppressive, unscrupulous, and offends the public policy established by the State of California, which, among other things, seeks to protect the reasonable expectations of consumers concerning the nature, extent and quality of their care coverage.

73.     Plaintiff suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

74.     As a result of Defendants' conduct, Plaintiff is entitled to restitution of monies paid for the purchase of Weed Slayer/Agro Gold WS.

75.     Plaintiff also seeks on behalf of the general public an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

### Fraudulent Business Acts and Practices

76.     Defendants' conduct as set forth herein constitutes fraudulent business practices under Business & Professions Code, sections 17200, *et seq.*

77.     As described above, Defendants made uniform misleading and fraudulent communications regarding the organic and natural characteristics of Weed Slayer/Agro Gold WS. Specifically, these fraudulent statements were located on the product labels, Defendants' websites, and in materials provided to consumers.

78.     As described above, Defendants made the following misrepresentations:

- Defendants' products are "products for organic crops."

- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."

- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."

- "Weed Slayer is made of Organic Eugenol and Molasses."

- The products in Defendants' Agro Gold product line are "biological amendments containing beneficial bacteria recommended for all crops."

- Agro Gold WS contains only bacteria and 65% water.

79.   In reality, Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat, both of which are prohibited under federal law for use in organic production.

80.   Defendants' misleading and fraudulent communications were and are likely to deceive reasonable California consumers, leading them to believe they are purchasing an organic, natural herbicide that did not contain glyphosate or diquat and was suitable for use in organic production.

81.   These communications regarded a material aspect of and were a substantial factor leading Plaintiff to purchase Weed Slayer/Agro Gold WS from Defendants.

82.   Plaintiff suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

83.   As a result of Defendants' conduct, Plaintiff is entitled to restitution of monies paid for the purchase of Weed Slayer/Agro Gold WS.

84.   Plaintiff also seeks on behalf of the general public an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

### THIRD CAUSE OF ACTION
Fraud

85.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

86.   As described above, Defendants made uniform misleading and fraudulent communications regarding the organic and natural characteristics of Weed Slayer/Agro Gold WS. Specifically, these fraudulent statements were located on the product labels and ARI's and Amazon's websites.

87.   As described above, Defendants made the following misrepresentations:

- ARI's products are "products for organic crops."

- Weed Slayer is "a unique organic broad spectrum, systemic herbicide."

- Weed Slayer is "an herbicide made from Eugenol, an essential oil of cloves, and molasses."

- "Weed Slayer is made of Organic Eugenol and Molasses."

- The products in Defendants' Agro Gold product line are "biological amendments containing beneficial bacteria recommended for all crops."

- Agro Gold WS contains only bacteria and 65% water.

88.    In reality, Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat, both of which are prohibited under federal law for use in organic production.

89.    Defendant ARI had a duty to disclose that Weed Slayer/Agro Gold WS was not organic, not suitable for use on organic crops, and contained the synthetic, non-natural herbicides glyphosate and diquat for three separate reason: (1) Defendant had exclusive knowledge of the active ingredients in Weed Slayer/Agro Gold WS; (2) Defendant actively concealed that Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat; and (3) Defendant made partial representations to Plaintiff regarding the active ingredients in Weed Slayer/Agro Gold WS but failed to disclose all active ingredients.

90.    Defendants Amazon and Amazon Services had a duty to disclose that Weed Slayer/Agro Gold WS was not organic, not suitable for use on organic crops, and contained the synthetic, non-natural herbicides glyphosate and diquat for two separate reason: (1) Defendant should have known that Weed Slayer/Agro Gold WS contained the synthetic, non-natural herbicides glyphosate and diquat; and (2) Defendant made partial representations to Plaintiff regarding the active ingredients in Weed Slayer/Agro Gold WS but failed to disclose all active ingredients.

91.    Said communications were made with actual knowledge of their falsity or with reckless disregard or deliberate ignorance of whether or not they were false.

92.    Defendants' misleading and fraudulent communications were and are likely to deceive reasonable California consumers, leading them to believe they are purchasing an organic, natural herbicide that did not contain glyphosate or diquat and was suitable for use in organic production.

93.     These communications regarded a material aspect of and were a substantial factor leading Plaintiff to purchase Weed Slayer/Agro Gold WS from Defendants.

94.     Plaintiff suffered concrete and identifiable economic injuries as a consequence of Defendants' unlawful conduct described above, because they purchased a product that was far inferior in value to that which was advertised and marketed by Defendants.

95.     As a result of Defendants' conduct, Plaintiff and the Class are entitled to all monetary and other damages permitted under the law, including, but not limited to restitution of monies paid to purchase Weed Slayer/Agro Gold WS and compensatory damages for resulting business harm, including loss of sales and harm to reputation.

## FOURTH CAUSE OF ACTION
Breach of Implied Warranty of Merchantability
(Against ARI, Amazon, and Amazon Services)

96.     Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

97.     Plaintiff brings this cause of action against ARI, Amazon, and Amazon Services on behalf of the Class.

98.     Defendants were at all times merchants with respect to Weed Slayer/Agro Gold WS, which was sold to Plaintiff and the Class, and were in the business of selling such products.

99.     Each container of Weed Slayer/Agro Gold WS comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it will be used. Defendants breached the implied warranty of merchantability because Weed Slayer/Agro Gold WS was not in merchantable condition when sold, was defective when sold, and did not possess even the most basic degree of fitness for ordinary use of an organic product.

100.    The ordinary intended purpose of Weed Slayer/Agro Gold WS, and the purpose for which it was marketed, promoted, and sold, as an organic alternative to synthetic herbicides. Weed Slayer/Agro Gold WS was not fit for that use because it (1) was not organic but actually contained glyphosate and diquat as active ingredients; (2) had the potential to be carcinogenic; and (3) posed unreasonably risks of substantial bodily injury resulting from its use and application. Due to these and other features, Weed Slayer/Agro Gold WS is not fit for its ordinary, intended use as an organic.

101.    Plaintiff and Class Members have had sufficient direct dealings with either ARI (via its website) or its agents (including retail sellers like Amazon and Amazon Services) to establish privity of contract between ARI and Plaintiff and Class Members.

102.    Plaintiff and Class members have had sufficient dealings with Amazon.com to establish privity of contract between Amazon and Amazon Services and Plaintiff and Class Members.

103.    Plaintiff and Class Members were third-party beneficiaries of ARI agreements with distributors and sellers for the distribution and sale of Weed Slayer/Agro Gold WS to consumers. Plaintiff and Class Members were the intended beneficiaries of ARI's implied warranties.

104.    Plaintiff and Class members were third-party beneficiaries of Amazon's and Amazon Services' agreements with distributors and sellers for the distribution and sale of Weed Slayer/ARI to consumers. Plaintiff and Class members were the intended beneficiaries of Amazon's and Amazon Services' implied warranties.

105.    Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach of their implied warranties of merchantability. Had Plaintiff and Class Members been aware of the unmerchantable condition of Weed Slayer/Agro Gold WS, they would not have purchased it, or would have paid less for it.

106.    Plaintiff seeks damages in an amount to be proven at trial, as well as any other relief the Court may deem proper.

107.    Defendants were provided notice of these issues by numerous complaints made by consumers directly to Defendants or through their agents within a reasonable amount of time after they discovered that Weed Slayer/Agro Gold WS was defective and unmerchantable.

**FIFTH CAUSE OF ACTION**
Consumer Legal Remedies Act
(Cal. Civ. Code §§ 1750, *et seq.*)

108.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

109.    Plaintiff has complied with the requirement to provide notice and an opportunity to cure to Defendants 30 days prior to bringing his claim under the CLRA for damages. The notice requirement has been completed as to all Defendants as of the date of this amended complaint.

110.    The California Consumer Legal Remedies Act applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

111.    Plaintiff and members of the Class are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

112.    Defendants' Weed Slayer/Agro Gold WS agricultural product is a "good" within the meaning of Cal. Civ. Code § 1761(a).

113.    Defendants have violated the CLRA by, *inter alia*:

- Misrepresenting the source, approval, or certification of their non-organic, synthetic product Weed Slayer/Agro Gold WS;

- Misrepresenting that non-organic, synthetic products have characteristics and benefits they do not have;

- Misrepresenting that non-organic, synthetic products are of a particular standard, quality, or grade when they are not;

- Advertising non-organic, synthetic products with an in intent not to sell them as advertised.

114.    As described above, Defendants materially misrepresented the natural and organic nature of Weed Slayer/Agro Gold WS on product labelling and in marketing information online.

115.    Defendants failed to disclose and intentionally omitted the material fact that its product was not organic and did not contain only natural active ingredients but included the synthetic herbicides glyphosate and diquat—both of which are prohibited for use in organic production.

116.    Had Defendants not affirmatively misrepresented its product to Plaintiff and the Class, they would not have purchased Weed Slayer/Agro Gold WS.

117.    Defendants' misrepresentations and material omissions, and Defendants' publication of these misrepresentations and material omissions, regarding the nature and characteristics of Weed Slayer/Agro Gold WS constitute unfair, deceptive, and misleading business practices in violation of Cal. Civ. Code § 1770(a).

118.    As a direct and proximate result of Defendants' violation of Cal. Civ. Code § 1750, *et seq.*,

Plaintiff and other Class members have suffered concrete and identifiable harm.

119.    Defendants' deceptive acts and omissions occurred in the course of selling a consumer product and have occurred up to the present. Accordingly, Plaintiff, on behalf of himself and the Class seek an order enjoining Defendants from continuing its unlawful business practices and from such future conduct.

120.    Plaintiff also seeks actual damages no less than $1,000, punitive damages, and any other relief that the Court deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, pray for judgment against Defendants as follows:

A.      An order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class;

B.      For actual and compensatory damages according to proof pursuant to all applicable laws and regulations;

C.      For restitution and disgorgement to the extent permitted by applicable law;

D.      For an order enjoining Defendants from continuing to engage in the conduct described herein;

E.      For civil and statutory penalties available under applicable law;

F.      For pre-judgment and post-judgment interest;

G.      For punitive damages under applicable law;

H.      For an award of attorneys' fees, costs and expenses as authorized by applicable law;

I.      For such other and further relief as this Court may deem just and proper; and

J.      For trial by jury on all causes of action so triable.


Dated: June 15, 2023

Shounak S. Dharap
Katherine A. Rabago
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888